Remo Foresi v. The Hudson Coal Co., Appellant.

Argued March 10, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Rudolph S. Houck,* and with him *John P. Kelley* and
*H. T. Newcomb,* of counsel for appellant.

*E. C. Marianelli,* for appellee.

Opinion by Keller, J., July 14, 1932:

This is a workmen's compensation case. It is very
similar in its basic facts to the cases of Gima v. Hud-
son Coal Co., 106 Pa. Superior Ct. 288, and Shott

v. Hudson Coal Co., 106 Pa. Superior Ct. 304, decided at this session. There is one important point of difference.

The referee made, inter alia, the following findings of fact:

"3. On July 30, 1930, claimant had wired up his holes for firing, plunged the battery and there was no explosion, and he returned to the holes, and an explosion occurred within three or four minutes later, and claimant was injured.

"5. As a result of the explosion, claimant was disabled up to September 10, 1930.

"6. That claimant was violating Rule No. 29 of Article XII of the Act of June 2, 1891, P. L. 176, at the time of the accident."

and, inter alia, the following conclusions of law:

"2. That the claimant, was violating Rule 29 of the Anthracite Mine Law of the State of Pennsylvania at the time of the injury, (Act of June 2, 1891), and was not acting in accordance with the special rules issued by the E. I. duPont deNemours & Company of Pennsylvania, governing the use of powder in Anthracite Mines of Pennsylvania, and issued in accordance with Rule 29, Article 12, of the Anthracite Mine Law.

"3. That claimant is not entitled to an award of compensation."

The claimant appealed from the sixth finding of fact and the second and third conclusions of law of the referee. Whereupon the coal company requested the Workmen's Compensation Board to make the following additional findings of fact:

"3A. Claimant charged his holes with gelatin, a high explosive manufactured by the E. I. duPont de-Nemours and Company of Pennsylvania, and used time delay fuses to fire them.

"3B. Special rules for the manner of charging, firing and using such explosives were issued by that

company, endorsed with its official signature, which at and before the date of claimant's accident and injury were approved by the superintendent of defendant's Gravity Slope Colliery and posted up in legible characters in conspicuous places at the colliery where they could be conveniently read by the persons employed, as required by Rules 29 and 54 of Article XII of the Act of June 2, 1891, P. L. 176.

"3C. Such special rules of the manufacturer provided among other things that 'a safe time, at least twelve hours or more, should be allowed before returning to a misfire.'

"3D. Claimant had actual knowledge of this rule.

"3E. A dangerous accident, causing injury to claimant and slighter injuries to his laborer and which might have caused the injury of other persons employed in the colliery, resulted from claimant's return to such misfire within a shorter time than the period prescribed by the special rules."
and to modify the second conclusion of law so as to read:

"2. Claimant's action in returning to the misfire within a less time than the period prescribed in the duly authenticated and posted special rules of the manufacturer of the high explosive which he was using, was a violation of Rule 29 of Article XII of the Anthracite Mine Law of June 2, 1891, P. L. 176. His injuries were the result of his unlawful act."

Following this, the Workmen's Compensation Board made, inter alia, the following findings of fact:

"Third. On July 30, 1930, claimant had wired up his holes for firing, had thereafter plunged the battery, but there being no immediate explosion, he disconnected the battery and returned to the face within a period of three or four minutes, at which time a delayed explosion occurred injuring the claimant.

"Fourth. Claimant had charged his holes with

gelatin, a high explosive manufactured by the E. I. duPont deNemours and Company of Pennsylvania, and had used time delay fuse to fire them.

"Fifth. No adequate notice had been posted on the premises governing the use of this explosive, particularly the necessary instructions concerning the firing of the explosive and returning to a misfire, as required by Rules 29 and 54 of Article XII of the Act of June 2, 1891, P. L. 176.

"Sixth. The claimant was disabled as the result of the foregoing accident and injury, from July 30, 1930, to September 10, 1930."

and, inter alia, the following conclusion of law:

"Second. That the claimant is entitled to compensation as provided in Article III, Section 306, paragraph (a) of the Workmen's Compensation Act as amended."

and awarded the claimant compensation. On appeal by the defendant to the court of common pleas, the appeal was dismissed and judgment entered for the claimant for the amount of the award.

At first blush, the fifth finding of fact of the Board would seem to justify the award in favor of the claimant and not be subject to review by the court of common pleas or this court, (Labuck v. Mill Creek Coal Co., 292 Pa. 284), but an examination of the opinion of the Workmen's Compensation Board shows that the emphasis is on the word 'adequate'; that the Board did not determine that the special rules authorized by Rule 29 of Article XII of the Anthracite Mine Law had not been authenticated, approved, posted and published as directed by the Act, but only that these rules were not adequate or sufficient to prevent a recovery by the injured claimant because (1) they did not sufficiently define what a misfire was, and (2) because the special rule invoked[1] used the word

Note 1. "A safe time, at least 12 hours or more, should be allowed before returning to a misfire."

'should' instead of 'must' and, therefore, constituted only advice and not an order or direction. We are led to this conclusion not only because of the unmistakable language of the opinion, but also because the evidence is clear, and in fact undisputed, that Section 54 of Article XII of the Anthracite Mine Law was complied with as to the authenticating, approving, posting and publishing of the special rule in question. We have, therefore, before us for consideration, not a matter of fact, but a matter of law which is reviewable by this court.

We cannot agree with the Workmen's Compensation Board on either point. The word 'misfire' is so self-revealing and self-explanatory that it needs no definition. To misfire means to miss fire, "to fail to be fired": Webster's Dictionary. After the claimant had wired up the holes for firing and plunged his battery and there was no explosion, it was clearly a misfire within the special rule in force. Precise definitions and explanations of what is included in a misfire would only cloud and befog the rule.

As regards the mandatory character of the rule, the word 'should' is not only an auxiliary verb, it is also the preterite of the verb, 'shall' and has for one of its meanings as defined in the Century Dictionary: "Obliged or compelled (to); would have (to); must; ought (to); used with an infinitive (without to) to express obligation, necessity or duty in connection with some act yet to be carried out." We think it clear that it is in that sense that the word 'should' is used in this rule, not merely advisory. When the judge in charging the jury tells them that, unless they find from all the evidence, beyond a reasonable doubt, that the defendant is guilty of the offense charged, they should acquit, the word 'should' is not used in an advisory sense but has the force or meaning of 'must', or 'ought to' and carries with it the sense of

obligation and duty equivalent to compulsion. A natural sense of sympathy for a few unfortunate claimants who have been injured while doing something in direct violation of law must not be so indulged as to fritter away, or nullify, provisions which have been enacted to safeguard and protect the welfare of thousands who are engaged in the hazardous occupation of mining.

The case is wholly different in its facts from the case of Pletnick v. P. & R. C. & I. Co., 14 Department Reports 1649, 13 Workmen's Compensation Board 414, for there the Board did not attempt to attack the adequacy of the rule in question, but found as a fact, supported by evidence, (1) that there was not sufficient proof that the claimant had used a metal tamper, contrary to the provisions of the act, and (2) that legal proof of the posting and publishing of the rule with the official signature of the manufacturer had not been made. Here proof of the printing and posting of the duly authenticated special rules of the manufacturer, approved by the mine superintendent, was made; and the claimant admitted that he knew of them.

As the Board did not make a definite finding of fact, in this respect, as requested by the defendant, but reversed the referee because the rule invoked was not adequate or sufficient, in that it did not define the word 'misfire' and contained only a cautionary or advisory suggestion instead of a command or obligation not to return before twelve hours, we cannot enter judgment for the defendant as was done in the Gima and Shott cases, but are required by the law to return the case to the Board for hearing and determination in due course. The other matters raised and argued in this appeal have been fully considered in the opinion in the Gima case and need not be discussed further.

The first, third, fourth and fifth assignments of error are sustained, the judgment is reversed and the record is ordered to be remitted to the Workmen's Compensation Board for further proceeding not inconsistent with this opinion.